Good morning, Your Honors, and if it pleases the Court, my name is Robert Burke. I'm here representing the Petitioner, Petrona Guadalupe Castillo-Osorio. Your Honor, diving right into the arguments, I think this case turns in large part on the issue of credibility. The on Ms. Castillo. She was 16 years old at the time that she gave her testimony. It appears to me from a review of the record that that adverse credibility determination was made based upon statements relating to her classmates and whether her classmates were kidnapped and ultimately disappeared. An explanation is given that she uses the term classmates very broadly to include both people that went to her school and people that didn't. I think in looking at this credibility issue and in looking at the Court's decision in making that adverse credibility determination, that the Court doesn't really have an articulable basis. And other than that small piece of information that the Court says is inconsistent, they haven't, the Court has not articulated a basis to doubt the credibility of this witness. Other than this one minor inconsistency, the Court doesn't state a specific cogent reason for the disbelief. And even if that is an inconsistency, even if that explanation was not an acceptable explanation, the next question would be whether that inconsistency goes to the court. This Court has never held that minor inconsistencies should lost stock and barrel undermine a respondent's credibility. Now, I think that that forces us into the issue of what about this explanation? And we're going to keep coming back. But doesn't the fact that she's on one hand says that her classmates, she saw classmates being kidnapped, and on the other hand, in her testimony, rebuts that statement in her I-589, doesn't it go directly to the heart of the issue of whether she's being persecuted or not? Well, it would, I mean, it's not, I saw my classmates eating ice cream and then I didn't see my classmates eating ice cream. That might not. And it's exactly where I was going also with my argument, Your Honor. So in response, the answer is it would, but. Now, number one, she does draw the distinction, she does make the clarification for the Court that on the one hand, I'm referring to classmates as being that go to school with me. On the other hand, I also refer to classmates as people who are basically in my same age who are going to different schools who are my acquaintance. That didn't vary the day with the I.J. And that is exactly, here we have a situation where that's the only explanation she's able to get out on the record. We have a situation where the I.J. basically shanghaied the questioning from the respondent's own attorney. Now, this is not a Lozada matter, per se, this is not based on competency of counsel, but you have the I.J. who basically takes away that line of questioning. She asks rather aggressively, in almost a Garovias kind of way, well, how can that make any sense? She gets this sort of half answer, this incomplete answer as to what exactly is this distinction I'm drawing between classmates and classmates. There's 33 questions. There's no follow-up question. There's no, I was looking for the question, to be perfectly honest, Your Honor, I was looking for the question of how are we to understand a distinction between classmates and classmates? But this questioning is so abrupt, this questioning is so brief, and this questioning is so lacking in any kind of a follow-up to it that all you have is the explanation of I refer to my classmates and I also refer to acquaintances from other schools as classmates. Now, given a greater opportunity to explain that, given a greater level of sophistication on the part of the respondent, given some, and I hate to say it, more probing questions from the respondent's attorney herein, that explanation may have carried the day. However, I think what we've got, and again, I'm going to refer back to Garovias, I think that we've got a situation where you've got a judge who really is demonstrating the predisposition to judge, to discredit this testimony. The judge says, look, I've got this inconsistency. The inconsistency has to do with what's a classmate, what's an acquaintance, and why she's using the term classmate differently in place one and differently in place two. Now, as the judge, I would like to define our terms. I would like to say, when do we understand that you're talking about classmates? When do we understand you're talking about acquaintances? Why do you come to use the one term to express both concepts? As a judge, I would have liked to have known that. Unless I'm saying, oop, I got my inconsistency. That gives me grounds to deny the case right there. I'm ready to go. Well, you know, I understand why you want to spend a lot of time on this, but let's assume she's credible. The main problem is this looks like another recruitment by the gorilla case. Where is the persecution for political opinion? Well, Your Honor, I'm going to very quickly say, where we have threats, intimidation, threats of violence, this Court has held in the past that that can rise to the level of what it could. But the purpose seems to be to recruit. Whether the purpose is the recruitment or not. Distinguish it from Elias Zacharias. I'm sorry, Your Honor? Distinguish it from Elias Zacharias. Well, I'd like to distinguish it from Elias Zacharias by, again, referring to the fact that she's given absolutely no opportunity to explain it. There's no, we don't have the explanation. The gorilla case. Are you saying she's denied due process or something? Your Honor, I have described it as a due process problem. Is that part of your claim? It is part of my opening brief, Your Honor, yes. To the board? Now there's the problem. Well, I think it was. I think it was. I mean, you just have to come up with reasons when you get here. I think, shall I address the due process aspect? Well, I don't think, if you didn't do it before the board. Well, there's a couple of ways I would like to address that if the Court does want to hear it. You can use your time anyway you want to, but you've got about a minute left. Thank you very much, Your Honor. Very quickly, I think there's three approaches to the due process violation. First of all, everything that has to do with development of the record falls back on this Garavias argument that the Court had a predisposition already. So that explains why the questioning isn't happening. And the Court in Garavias didn't treat that necessarily as a due process violation. They treated that as a reason to disaffirm the Court's adverse credibility problem. Number two, in terms of exhaustion, was a due process claim raised by the board. And I do argue in my brief that generally it was. That generally, in the notice of appeal, the respondent in pro per pointed out there were errors in the way this proceeded that affected my ability to have a full and fair hearing. So I would argue that that's enough to put the government on notice and the board on notice that there's a due process violation. Finally, and very quickly, there's the doctrine of futility. When you have the board adopting the adverse credibility determination of the immigration judge, if I were to go back to the board and at this point there would have to be a motion to reopen based upon new facts, I can put in new facts. But if the board is already adopting that adverse credibility determination, the doctrine of futility would seem to play in. Okay. We'll ensure the rest of your time. You've got about a minute and a half. Thank you, Your Honor. Hear from the government? Good morning, Your Honors. Ann Varnon for the respondent. Your Honors, we believe that this is a very straightforward case involving an adverse credibility finding and also a finding that the petitioner failed to meet her burden of proof. I do believe that this case is exactly like Elias Zacharias. And also, it's sort of unclear on the petitioner's opening brief at page five, they say it appears that a group of people known as FAR who are against the government are attempting to recruit young students into their organization. They hold meetings and if the students do not attend and cooperate, they are then threatened. So this seems to be their allegation. It's not clear whether this is on account of political opinion or on account of particular social group. But first to the credibility finding of the immigration judge, which is clear and goes to the heart. You're not saying that the FAR is not sufficiently identified as a Marxist Leninist group that is ready to kill anybody who is not on their side, are you? I mean, it doesn't have to be. They're not seeking certain families. They're just saying anybody who's not with us is against us and we're Marxist Leninists and that's what we're going to do. Is that right? I'm going to the vagueness of the on account of argument, whether this is a matter of political opinion or whether it's a matter of particular social group. It's not real clear from this record. So I'm just reading what the petitioner has said about the basis. Well, let's split the arguments and why don't you deal with them separately. Let's take the political opinion first. I mean, there is room even after Elias Zacharias in recruitment cases to find that there is persecution on account of political opinion if it's expressed or imputed on the evidence of the case. Now, she did have a political opinion, which was not to be of their opinion, she says. She testifies to that. And there were meetings that she resisted. So that aspect is getting a little bit like our cases of Borja and Briones, where we held that resistance to forced recruitment on the basis of philosophy can constitute political opinion. What's your response to that in the context of this case? In the context of this case, assuming that the petitioner is credible, which the immigration judge found that she clearly was not, the petitioner indicated that she was approached and she was always in a group of 10 to 15 girls standing outside of her school and on various occasions. But there's nothing to indicate other than, they showed that they weren't interested in going off to these meetings with the gorillas, and that's what prompted the gorillas to threaten them. But there is nothing to indicate that this petitioner was ever approached by name, approached individually. In fact, when she says that they did kidnap some people that were in the country, some of the school girls in the country, they did kidnap them, but not the ones that were in my school with me. So she really hasn't experienced anything untoward. She's relying on hearsay that there have been some kidnappings of classmates in the universal sense of school girls in her country. Well, how do you deal with this question? They threatened you how? Answer, that if I didn't attend the meetings, they were going to kidnap me by force. I mean, that sounds pretty direct. Well, it was directly made to her and her group. Well, I didn't say her group. That was the question and answer. Did they threaten to you that if I didn't attend the meetings, they were going to kidnap me by force? And I credit your interpretation that she's talking about some meetings, but why isn't that specific enough as to her? I mean, your point was that it's general. There was no specific testimony as to her. It looks like at least there's some indication in the record that she said I was threatened. If the court would wish to construe that as her saying as a young girl that she didn't want to be a part of this group, that was the only thing that she said. The court, I think, would have to go far to construe that as a political opinion. I was dealing with the difference. I'm sorry. I probably wasn't clear. She says later on that she had a political opinion against it. You said nothing happened to her. She was just, it was a generic threat. So I was responding to your statement that there was nothing in you to react to that testimony. So yeah. Okay. That she didn't want to be a part of them. And then she goes on to say, I mean, this is the next page. So they wanted to influence your political opinion. Yes. And question, did you have a political opinion? Well, the only opinion I had was not to be of their opinion. That's true. Why isn't that a sufficient? It's really a recruitment case like Elias Zacharias. Right. But I guess getting back to my other point, not all recruitment cases are necessarily precluded by Elias Zacharias, it seems to me. The question is, is there a sufficient expression of political opinion and resistance to recruitment that brings it outside the parameters of Elias Zacharias? And that's, that's the question I have for you in this case. That really does not exist here, Your Honor, because she never indicates that she spoke with anyone, that the people actually saw that the girls were disinterested in attending their meeting. And so it drove them to, to threaten them. But she never indicates that she spoke with anyone directly, that she expressed a political opinion to anyone directly, that there would have been any reason for the guerrillas to have imputed a political opinion to her. After all, these were schoolgirls on the outside of the school, outside of, before or after school. So there is nothing that would indicate, we believe, to bring this within some kind of exception to Elias Zacharias. And she, she has, I would like to go back to the, the issue of credibility, because the immigration judge did say that she gave the petitioner an opportunity to clarify what she meant by, are you talking about schoolgirls in general, or are your classmates in a generic case? And she goes back on page 78 of the record. She said, they were not my friends. They did kidnap them, but not the ones that were in school with me. So again, she seemed to be recanting what she had said in her asylum application. And that goes to the very heart of her asylum claim. So it was not, I differ with opposing counsel that, that the judge was required to go through some sort of pro forma questioning of this petitioner when she was able to satisfy the lack of credibility based on that one claim. That is not a minor inconsistency of the record, but the heart of the claim. Well, I guess I, my reaction to reading was, was that it seems that she explained it. She did explain it. I mean, if I'm talking about the people who graduated me in the class of whatever year, I couldn't be talking about my own high school or everybody in the high schools of the United States that year. That's correct. That's how she did explain it. So what's the lack of credibility? I'm failing to understand that. In her asylum application, she says, I saw them take them. And that's quite a bit different than saying, no, they didn't kidnap any of the ones who were at my school. In fact, when I stopped attending school, all the ones who were there with me were still there. So that's a direct conflict with the very essence of her claim that she saw her school, her classmates being taken away, never to be seen again. And then to come back to the immigration judge and say, well, I'm talking about classmates in a more universal sense. The ones that she had heard about, but she said they did kidnap them, but they're not the ones that were in school with me. So I think the immigration judge had no need to continue with some kind of pro forma hearing of going through X number of questions to the petitioner to make a determination that the petitioner was not credible. But we believe that the immigration judge made the further finding that she did not satisfy her burden of proof, that there is no on account of, shown here, either the political opinion or particular social group. Okay. Thank you for your argument. Rebuttal. Okay. Thank you both for your arguments. And we'll proceed to the next case on the argument calendar, which is Santos Morales versus Petroff.
judges: Noonan, Thomas, Bea